UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Yandell McKenny, #322217 | ) C/A No. 4:11-cv-366-RBH-TER |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| Cecelia Reynolds; J. Washington; Derrick Seward; Official and Individual capacities, | ) |
| Defendants. | ) |

Plaintiff, Yandell McKenny (Plaintiff), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate in Kershaw Correctional Institution (KCI), a facility of the South Carolina Department of Corrections (SCDC), and files this action *in forma pauperis* under 28 U.S.C. § 1915.[1] Plaintiff's Complaint names KCI's Warden Cecelia Reynolds, Assistant Warden Jerry Washington, and Major Darren Seward as Defendants.[2] The Complaint filed in this case has been filed prematurely and is subject to summary dismissal, without prejudice and without issuance and service of process, because it is apparent from the face of the Complaint that Plaintiff has failed to exhaust his administrative remedies prior to filing suit under § 1983, as is required by the Prison Litigation Reform Act of 1996 (the PLRA), 42 U.S.C. § 1997e(a).

---

[1] Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[2] Title 28 U.S.C. § 1915A (a) requires review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

1

### *Pro Se* and *In Forma Pauperis* Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; 42 U.S.C. § 1997e (the PLRA); and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); and *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983). This Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted," or is "frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i), (ii), (iii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. at 31. A claim based on a meritless legal theory may be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995). Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

As Plaintiff is a *pro se* litigant, this Court is required to liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)*; Estelle v. Gamble*, 429 U.S. 97 (1976). Even under this less stringent standard, however, the *pro se* complaint is subject to summary

dismissal.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## **Background**

Plaintiff, who is serving a ten-year sentence for strong arm robbery in KCI, files this § 1983 action[3] against Defendants, in their official and individual capacities.  Liberally construed, Plaintiff's Complaint attempts to allege that Defendants are failing to protect him from a substantial risk of serious harm by denying his request to be placed in protective custody.  *See Farmer v. Brennan*, 511 U.S. 825 (1994).  Plaintiff alleges that "on 12-16-10, I wrote Ms. Allen (classification) and informed her that I wanted to be put on protective custody because I was in fear of my life and that I have been getting threats from on SMU [Special Management Unit] and on the yard."  ECF No. 1, p. 3.  Plaintiff alleges that, on January 6, 2001, he was taken "out of my room into the SMU office to sign the protective custody papers and then I was placed in the holding cell" while an SMU officer took his paperwork to the classification office.  ECF No. 1, p. 3.  However, Plaintiff alleges that "they put me back into the same room which I was in when I told them I don't feel safe around anyone."  ECF No. 1, p. 3.  Plaintiff alleges that he then wrote to Defendants Reynolds, Washington, and Seward, "on 01-08-11," reiterating his request and stating that he feared for his life, but that

---

[3] Section 1983 of Title 42 of the United States Code is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law."  *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973).  The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996).  To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

Defendant Washington told him that receiving threats "doesn't justify P.C." ECF No. 1, p. 3. As to the relief that Plaintiff seeks, he states: "I would like to be removed from this institution" and "be granted $50,000 dollars for my claims of breach of security and negligence." ECF No. 1, p. 4. Plaintiff's Complaint specifically alleges that he "refiled" a grievance, number "0092-11," concerning his claims, on "01-25-11," and that, as of the date he completed his Complaint and mailed it to this Court, he had not received a final agency/departmental/institutional answer or determination concerning this matter. ECF No. 1, p. 2.

Attached to his Complaint, Plaintiff filed two "Request to Staff Member" forms. *See* ECF No. 1-2. The earlier form, dated "12-30-10," is addressed to "Ms. Allen, Classification," reminds her that he wrote to her earlier in December, and states:

> I want to go on protective custody because I am in fear of my life and I want to be moved because there was a threat made on my life and I don't know who to trust and I'm not playing about this request [;] this is for real [;] this is my life [.]  I also want to know if I go disciplinary free for 2 years will my max-out date move to 7-1-13 [?] Could you let me know that when you write me back asap [?] Thank you[.]

ECF No. 1-2, p. 2.

Ms. Allen replied, on January 6, 2010, that "Your information was pass[ed] on to Capt. Ford." ECF No. 1-2, p. 2. The other "Request to Staff Member," dated "1-16-11," is addressed to "Asst. Warden Washington," recounts Plaintiff's earlier, unsuccessful efforts to be placed into protective custody, and states:

> I was put back in the room with someone that is breaching the security policy of South Carolina Department of Corrections [;] so your the head of security here at Kershaw Correctional Institution so I'm written you [;] I also wrote Warden Reynolds, Major Seward, Capt. Ford, Director Bill Williams of SCDC, Govenor Nikki Haley, my family and also my pastor about this matter to let the know

4

> Kershaw Correctional Inst is not holding their security policy and I also sent copys of Ms. Allens request form that I wrote stating I wanted to be on protective custody almost a month ago and nothing has been done [;] I would like for you to get back to me as soon as possible [.]

ECF No. 1-2, p. 1.

Defendant Washington replied, on "1-21-11," "You have only sent a staff request to Ms. Allen about going on P.C. There is no documented incident about any problems you and your roommate are having. This does not justify P.C." ECF No. 1-2, p. 1.

## Discussion

Plaintiff's Complaint attempts to allege that Defendants have been/are being deliberately indifferent to his request that he be placed in protective custody and that Defendants have failed/are failing to protect Plaintiff from a substantial risk of serious physical harm. However, as a threshold matter, it is clear from the face of the Complaint that Plaintiff filed this case prematurely, before he exhausted the SCDC administrative remedy process. The PLRA, 42 U.S.C. § 1997e(a), provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "To properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007)(quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Plaintiff must exhaust

5

his administrative remedies *prior* to filing a federal complaint. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)("[T]he district court lacks discretion to resolve the [inmate's] claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment"); *Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001).

Accordingly, before Plaintiff may proceed with his claims against Defendants in this Court, he must have first exhausted his administrative remedies available through SCDC's inmate grievance process. The United States Supreme Court has held that, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 524 (2002). *See Booth v. Churner*, 531 U.S. 956 (2001)(PLRA requires administrative exhaustion even if grievance procedure does not allow monetary damages and prisoner seeks only monetary damages, so long as grievance tribunal has authority to take some responsive action).

Although the lack of exhaustion of administrative remedies is considered an affirmative defense and not a jurisdictional infirmity, *see Jones v. Bock*, 549 U.S. 199 (2007), under existing precedent in the Fourth Circuit if the lack of exhaustion is apparent from the face of the prisoner's complaint, *sua sponte* dismissal prior to service of the complaint is appropriate. *See Anderson v. XYZ Correctional Health Servs.*, 407 F.3d 674, 683 (4th Cir. 2005); *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655-56 (4th Cir. 2006). Here, Plaintiff's allegations clearly show that he did not pursue his administrative remedies through the prison grievance process, thus *sua sponte* dismissal of his Complaint is appropriate under *Nasim* and *Anderson*. Additionally, there is no assertion that the administrative process is unavailable. *See Hill v. Haynes*, 380 Fed. Appx. 268, 270 (4th Cir. 2010); *Bacon v. Greene*, 319 Fed. Appx. 256, 257-

58 (4th Cir. 2009)[4]. Plaintiff simply alleges that he "refiled" a grievance, number "0092-11," on "1-25-11"and, in response to the question on the complaint form "Have you received a final agency/departmental/institutional answer or determination concerning this matter (*i.e.*, your grievance)?," Plaintiff checked "No." ECF No. 1, p. 2. Plaintiff also alleges that he complained to prison authorities, stating "I wrote the Warden, Major, Captain and nothing happened." *Id.* Since Plaintiff has specifically admitted that he has not yet exhausted the SCDC grievance remedy for the alleged "negligence and breach of security" of which he complains, it is clear that the Complaint in this case is premature and is subject to summary dismissal.

Under provisions of the 2009 version of SCDC's inmate grievance policy, an SCDC inmate must wait one hundred twenty-five (125) days from presenting his Step 1 written grievance to the prison to file a complaint in federal court.[5] This time period gives the prison administrators a chance

---

[4] "An administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Thus, when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality. Accordingly, the district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" *Hill*, 380 Fed. Appx. at 270 (4th Cir. 2009)(internal citations omitted).

[5] The SCDC inmate grievance policy time limits are summarized as follows: After unsuccessful attempts at informal resolution of the problem(s), **(1)** an inmate must fill out a Form 10-5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; **(2)** the grievance must then be entered into SCDC's automated system within ten working days, and the Institutional Inmate Grievance Coordinator (IGC) notified; **(3)** the IGC must then, within ten working days, finalize the grievance in the system and attempt to informally resolve the issue, prior to submission to the Warden; **(4)** the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; **(5)** the inmate may then appeal the Warden's response by completing a Form 10-5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; **(6)** the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director

to resolve the matter without implicating judicial oversight of prison administration which is disfavored. After the full one hundred twenty-five (125) days have passed with no response to a grievance, a South Carolina prisoner will have exhausted "such administrative remedies as are available." *See* 42 U.S.C. § 1997e(a); *e.g. Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). In this case, Plaintiff states that his request to be placed into protective custody was initiated on December 16, 2010 and formally submitted on January 6, 2011 when Plaintiff "sign[ed] the protective custody papers." After Defendants' denial of Plaintiff's request, Plaintiff alleges that he "refiled" a grievance in this matter on January 25, 2011, however he does not state when he originally filed the grievance. Even if Plaintiff's "Request to Staff Member" submitted to Ms. Allen on December 30, 2010 could be very liberally construed as Plaintiff's earliest attempt to initiate the SCDC grievance process, it is clear from the face of Plaintiff's pleading that no more than forty-six (46) days, at most, could have passed from that date until the date Plaintiff mailed his Complaint to this Court for filing. Plaintiff's Complaint is undated, but it was received by this Court on February 14, 2011 and docketed on February 17, 2011. *See* ECF No. 1, p. 1, 4; ECF No. 1-1. As noted above, under SCDC's inmate grievance policy, Plaintiff's grievance is considered pending until approximately one hundred

---

of Operations) for a response; **(7)** the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, **(8)** the IGC has five days to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA-01.12, at §§ 11; 13.1-13.6 (Sept. 1, 2009). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.* The maximum time that the full grievance process is supposed to take, even if an allowable 90-day extension is granted, is 215 days. The inmate will be notified in writing by the IGC if an extension is granted for a response at either step. *Id.* The regular time limits do not apply in emergency situations or where criminal activity is alleged in the grievance and it is necessary to refer the matter to the South Carolina Law Enforcement Division for investigation.

twenty-five (125) days have passed, therefore Plaintiff's grievance could not possibly have been exhausted prior to the filing of his Complaint. As it is clear from the face of Plaintiff's Complaint that he did not exhaust his administrative remedies prior to filing this action, Plaintiff's Complaint should be summarily dismissed *without prejudice*.

## **Recommendation**

Accordingly, it is recommended that the District Court dismiss the Complaint in the above-captioned case without prejudice and without issuance and service of process. Plaintiff's attention is directed to the important notice on the next page.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

March 17 , 2011
Florence, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).